**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **TAFS, INC.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 19-2661-CM-ADM** |
| ) | |
| **APEX CAPITAL CORP.,** ) | |
| **A.G.Y. LOGISTICS 1, INC.,** ) | |
| **and SANTA RACKAUSKAITE,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the motion brought by defendant Apex Capital Corp. ("Apex")

to dismiss plaintiff's claims, based on its argument that it is not subject to the jurisdiction of this court.

(Doc. 14.)  Apex is a nationwide factoring company, with its base of operations in Fort Worth, Texas.

Plaintiff TAFS, Inc., is a competing factoring company, based in Olathe, Kansas.  Each company has

engaged in business with defendant A.G.Y. Logistics 1, Inc. ("AGY"), a commercial carrier based in

Chesterton, Indiana.  Defendant Santa Rackauskaite is an individual living in Naperville, Illinois, who

provided a personal guaranty for AGY's performance of its contract with plaintiff.  Plaintiff filed its

Petition for Damages (Doc. 1-1) in the Kansas District Court of Johnson County on September 30,

2019.  The suit was removed by Apex to this court thereafter. (Doc. 1.)

### *Background*

Because the court's focus is on the factual allegations regarding its exercise of jurisdiction, the

court will set forth only a brief summary of the parties' dispute.  Plaintiff and Apex operate similar

enterprises:  they purchase accounts receivables from other companies.  This provides the selling

companies with cash when they need it; plaintiff and Apex, the "factors," recover their investment when they collect the balances owed to the selling companies. Plaintiff states that Apex and AGY entered into a factoring contract on May 8, 2014, pursuant to which AGY agreed to sell all its accounts receivables to Apex. According to plaintiff, that contract terminated on September 9, 2019.

Prior to its termination, on July 31, 2019, plaintiff entered into a factoring contract with AGY. The contract had a one-year term, with annual automatic renewals. The contract was exclusive; AGY was to present all its existing and future accounts receivables to plaintiff for purchase. When plaintiff received confirmation that the Apex-AGY contract had been terminated on September 9, 2019, plaintiff immediately began collection on AGY receivables. The following day, Apex emailed AGY "falsely claiming" that AGY had violated its agreement with Apex "because TAFS would not agree to purchase all outstanding AGY A[ccounts] R[eceivable]s from Apex." (Doc. 1-1, at ¶ 27.) Plaintiff went on to purchase approximately 260 invoices from AGY between September 9 and September 19, 2019, including six invoices involving Kansas debtors or involving shipments to or from Kansas locations. (Plaintiff Affidavit, Doc. 19-2, at ¶ 12.) During the same time period, plaintiff wrote Apex and demanded that it cease and desist from interfering with plaintiff's factoring contract with AGY. Apex followed up with a letter to AGY debtors, on September 17, directing those debtors (including some Kansas debtors) to continue paying Apex on all AGY invoices. By the end of the month, plaintiff learned that Apex was again purchasing AGY's accounts receivables. Despite the contract, AGY confirmed that it would no longer send accounts receivable invoices to plaintiff, and, further, it has refused to provide plaintiff with financial records for the period of time that they were doing business. In addition to the prospective losses caused by AGY's alleged breach and Apex's interference, plaintiff has also suffered losses resulting from its purchase of accounts receivables which were subsequently collected upon by Apex.

Plaintiff has filed a four-count complaint alleging that Apex tortiously interfered with its contract with AGY (Count I), that Apex tortiously interfered with plaintiff's business expectancy (Count II), that AGY breached the contract with plaintiff (Count III), and that defendant Rackausaite breached her personal guaranty (Count IV). Plaintiff argues that this court may exercise jurisdiction over Apex because Apex is a large nationwide operation that does business in Kansas. In support of this contention, plaintiff cites Apex's website which touts its role as "America's Favorite Factoring Company." Apex offers its customers discounts on hotels, fuel, truck and tire service, and roadside assistance, including at locations in Kansas. Its hotel partner, CLC Lodging, is a Kansas corporation. Apex also offers its customers a mobile app to enable them to locate vendors which offer the discounts; some of those vendors are in Kansas. Further, Apex intentionally directed operations into Kansas, when it knowingly interfered with plaintiff's contract with AGY and collected on AGY's invoices, some of which originated in Kansas.

In its motion to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(1), Apex characterizes plaintiff's jurisdictional allegations as conclusory. Apex, through the affidavit of its vice president and general counsel (Doc. 15-2), states that it is based in Texas; it maintains no offices in Kansas; it has no employees or agents in Kansas; it is not registered to do business in Kansas, nor does it own property or pay taxes there. Apex acknowledges that it exchanged a couple of emails with plaintiff in September 2019. (Doc. 15-6.) However, it argues, the focus of the present dispute arises out of Apex's business relationship, not with plaintiff in Kansas, but with AGY in Indiana.

*Analysis*

It is the plaintiff's burden to establish that the court's exercise of personal jurisdiction over each defendant is proper. *Newsome v. Gallacher*, 722 F.3d 1257, 1266 (10th Cir. 2013); *OMI Holdings, Inc., v. Royals Ins. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 2005). In ruling on a motion to dismiss

and determining whether the plaintiff has fulfilled this burden, the court assumes the allegations in the complaint are true to the extent they are not controverted, and resolves all factual disputes in the plaintiff's favor. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). When the jurisdictional issue is raised early in the litigation and there is no evidentiary hearing, the plaintiff may defeat the motion to dismiss with a prima facie showing (accompanied by an affidavit or other materials, if necessary) that personal jurisdiction exists by providing factual allegations that, if true, would support jurisdiction. *Id.*; *OMI Holdings*, 149 F.3d at 1091. In order to overcome the prima facie showing, the defendant "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Where, as here, the court's subject matter jurisdiction is based on diversity of citizenship, personal jurisdiction is established by the law of the forum state; in this case, Kansas. *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011); Fed. R. Civ. P. 4(e). Kansas's long-arm statute, Kan. Stat. Ann. § 60-308(b), extends the reach of Kansas courts to the full extent permitted by the due process clause of the federal constitution. *Marcus Food*, 671 F.3d at 1166. Consequently, the court may skip the state statutory analysis and proceed directly to a determination of whether the court's exercise of jurisdiction comports with the principles of due process. *Id.* To avoid the prospect of making an individual subject "to the binding judgment of a forum with which he has established no meaningful 'contacts, ties or relations,'" the Supreme Court has instructed courts to identify at least minimum contacts between the defendants and the forum state. *Burger King*, 471 U.S. at 471–72 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). If minimum contacts are demonstrated, then the court must ensure "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 325 U.S. at 316 (internal quotations omitted).

Jurisdiction may be general, that is, where a defendant has "continuous and general business contacts" with the forum; or it may be specific, meaning that the defendant has purposefully directed his or her activities at the forum state and the lawsuit arises from those activities. *OMI Holdings*, 149 F.3d at 1091. In this case, plaintiff argues that it has demonstrated that defendant has general and specific contacts with Kansas sufficient to support the court's exercise of personal jurisdiction.

### *General personal jurisdiction*

To establish that the court's exercise of general personal jurisdiction is proper, a plaintiff must show that defendants' contacts with Kansas are "so continuous and systematic as to render them essentially at home" there. *Heffington v. Puleo*, 753 F. App'x 572, 576 (10th Cir. 2018) (citing *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General personal jurisdiction isn't necessarily connected to the defendants' activities leading to the lawsuit, but instead arises from "a defendant's general business contacts with the forum state." *OMI Holdings*, 149 F.3d at 1091. "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Meyers Squibb Co. v. Superior Ct. of Cal, San Fran. Cty.*, 137 S. Ct. 1773, 1780 (2017). However, the analysis of the contacts required to support the court's exercise of general personal jurisdiction is "more stringent." *OMI Holdings*, 149 F.3d at 1091; *see Morrison Co., Inc. v. WCCO Belting, Inc.*, 35 F. Supp. 2d 1293, 1295 (D. Kan. 1999) (cataloging factors).

In *Goodyear Dunlop*, the Supreme Court explained that while the "paradigm forum" for an individual is his or her domicile, "for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home," such as the place of incorporation or the principal place of business. 564 U.S. at 924. Despite nationwide tire sales, including some in the disputed forum, the Court declined to approve of the exercise of general personal jurisdiction "over a nonresident

corporation in a cause of action not related to those purchase transactions." *Id.* at 929; *see also Bristol-Myers*, 137 S. Ct. at 1778; *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (limiting jurisdiction to a corporation's place of incorporation or principal place of business because "[t]hose affiliations have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily ascertainable"). The *Daimler* Court characterized its respondents' argument – that a corporation should be amenable to jurisdiction in every forum where it "engages in a substantial, continuous, and systematic course of business" – as "unacceptably grasping." *Id.* at 138.

The Tenth Circuit has already determined that a website like Apex's, although accessible to Kansas businesses and individuals, is insufficient to provide a basis for general personal jurisdiction, unless it is deliberately directed at the forum state. *Shrader*, 633 F.3d at 1241; *Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, 200 F. Supp. 3d 1194, 1202–03 (D. Kan. 2016). Based on this guidance from the Supreme Court and the Tenth Circuit, and bearing in mind that Apex is neither incorporated nor headquartered in Kansas, the court finds insufficient contacts for the exercise of general personal jurisdiction over Apex in the present case.

### *Specific personal jurisdiction*

For the exercise of specific personal jurisdiction, the plaintiff must show that the defendants "purposefully directed" their activities to Kansas, and that plaintiff's tort claims arise out of those activities. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017). The contacts cannot be attenuated or random; they must be deliberate. *Id.* "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum state." *Walden v. Fiore*, 577 U.S. 277, 284 (2014) (quoting *Burger King*, 471 U.S. at 475) (emphasis in original). Additionally, the relevant contacts are those between the defendant and the forum, not between the parties. *Id.* at 285. The *Walden* Court found that specific personal jurisdiction exists "over defendants who have

-6-

purposefully 'reach[ed] out beyond' their State and into another by, for example, entering a contractual

relationship that 'envisioned continuing and wide-reaching contacts' in the forum State."  577 U.S. at

285 (quoting *Burger King*, 471 U.S. 479–80); *Inspired by Design*, 200 F. Supp. 3d at 1204.

Allegations that the defendant committed an intentional tort that injured a forum resident, without

more, are generally insufficient to support the exercise of personal jurisdiction.  *Far W. Capital, Inc. v.

Towne*, 46 F.3d 1071, 1078–79 (10th Cir. 1995) (requiring instead "a particularized inquiry as to the

extent to which the defendant has purposefully availed itself of the benefits of the forum's laws").

In the case before the bench, the "episode-in-suit," *Goodyear Dunlop*, 564 U.S. at 919, is the

dispute between plaintiff and Apex over contracts each entered into with AGY, an Indiana company.

The fact that a few of AGY's clients may be based in Kansas, or may be engaged in picking up or

delivering freight to Kansas, is not sufficient to demonstrate that Apex intentionally and deliberately

directed its activities at Kansas.  It appears more likely that Apex purposefully directed its activities to

AGY in Indiana.  The location of AGY's clients or vendors provide only an attenuated, random or

unintended connection between Apex and Kansas.  Likewise, plaintiff's location in Kansas is not

evidence of any intention on Apex's part to direct its business operations there.  Consequently, the

court concludes that plaintiff has failed to make a prima facie demonstration sufficient to support this

court's exercise of specific personal jurisdiction over Apex.

### *More discovery*

Plaintiff's requests for oral argument or to pursue limited jurisdictional discovery are denied, as

the probability is extremely low that additional discovery would provide information sufficient to cure

the present jurisdictional shortcomings.  (Doc. 19.)  *See Grynberg v. Ivanhoe Energy, Inc.*, 490 F.

App'x 86, 2012 WL 2855777, at *13 (10th Cir. July 12, 2012).  Furthermore, no party has moved,

alternatively or otherwise, to transfer this matter to another forum, pursuant to the court's powers

under 28 U.S.C. § 1631.  Consequently, and because there are additional parties to this lawsuit whose interests have not been represented during the adjudication of the present matter, the court refrains from transferring the suit *sua sponte*.  *See Trujillo v. Williams*, 465 F.3d 1210, 1222–23 (10th Cir. 2006).  Time permits plaintiff to determine the appropriate next step, and the court, accordingly, dismisses the claims against defendant Apex in the Petition for Damages (Doc. 1-1) without prejudice to those claims being refiled in an appropriate forum.

## *Conclusion*

**IT IS THEREFORE ORDERED** that the motion of Apex Capital Corp. to dismiss the claims against it in the Petition for Damages is hereby granted.  (Doc. 14.)  Those claims (Counts I and II) are hereby dismissed without prejudice to their refiling in an appropriate forum.

Dated this 27th day of January, 2020, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**